## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| MANAGEMENT ALTERNATIVES, INC.<br>1420 K Street NW #500<br>Washington, D.C. 20005<br><br>      Plaintiff,<br><br>  v.<br><br>TIFFANY WILLIS<br>1253 Eldon Street, Apt. 201<br>Herndon, Virginia 20170<br><br>AND<br><br>PROJECT SOLUTIONS GROUP, INC.<br>580 Herndon Parkway, Suite 500<br>Herndon, Virginia 20170<br><br>     Serve:    Resident Agent<br>             J. Carlton Howard, Jr.<br>             11350 Random Hills Road<br>             Suite 400<br>             Fairfax, Virginia 22030<br><br>     Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> *    Civil Action No.:<br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>COMPLAINT</u>
### (Breach of Contract and Tortious Interference with Contract)

COMES NOW Plaintiff, Management Alternatives, Inc ("Plaintiff"), by and through its

undersigned counsel, and hereby complains against Defendants Tiffany Willis ("Willis") and

Project Solutions Group, Inc. ("PSG") (together, "Defendants") as set forth below.

1.  This is an action for damages and injunctive and other relief, asserting claims for

breach of the non-compete and non-solicitation provisions of Willis' Employment Agreement

with Plaintiff, entered into on or about May 29, 2006.  Willis' Employment Agreement is

attached hereto as Exhibit 1 and is incorporated by reference herein.

2.  Plaintiff is entitled to immediate injunctive relief because Willis' improper conduct has caused and, unless enjoined, will continue to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law.

3.  This is also an action for damages and injunctive and other relief against PSG for PSG's tortiously, knowingly and intentionally causing Willis to breach her Employment Agreement with Plaintiff.

## PARTIES, JURISDICTION, AND VENUE

4.  Plaintiff is a Washington, D.C. corporation with its principal place of business in Washington, D.C.  Plaintiff operates its office at 1420 K Street, NW Washington, D.C. 20005.

5.  Defendant Willis is an individual who, upon information and belief, is a citizen of the Commonwealth of Virginia and resides in Herndon, Virginia.  Willis is employed by PSG and, upon information and belief, currently engages in significant business activities on behalf of PSG in Washington, D.C.

6.  PSG is a Virginia corporation with its principal place of business at 580 Herndon Parkway, Suite 500, Herndon, VA 20170.  PSG, upon information and belief, engages in significant business activities in Washington, D.C.

7.  The amount in controversy in this action exceeds $75,000, exclusive of costs and fees. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332.  Venue is proper pursuant to 28 U.S.C. §1391, because the Employment Agreement was entered into in the District of Columbia and because Defendants do business in the District of Columbia.

8.  Pursuant to paragraph 11 of the Employment Agreement, the laws of the District of Columbia shall govern the Employment Agreement and any disputes arising therefrom.

## FACTS COMMON TO ALL COUNTS

**Plaintiff's Business and Protectable Business Interests**

9. Since 1983, Plaintiff has been in the business of providing business relocation and facility change-related services for business clients. Plaintiff manages costs and risks associated with its clients' relocation issues. Plaintiff has assisted its clients in relocating corporate headquarters, research laboratories, law firms, high-tech facilities, public agencies, and special facilities, including airports, production studios, and many other types of facilities throughout the Washington, D.C. metropolitan area.

10. The business relocation industry in the Washington, D.C. metropolitan area consists of a small number of highly-specialized firms competing for the same, largely federal Government and corporate or law firms with government-related businesses. Competition in the business relocation industry is fierce and highly dependant on the development of professional contacts and reputation. Morover, finding and recruiting highly qualified personnel is very difficult due to the breadth of knowledge required to be effective and the limited venues for obtaining proper training and experience.

11. A critical component of Plaintiff's success is the development of close business relationships, through its employees, with key decision makers for Plaintiff's clients.

12. Over the years, Plaintiff has devoted substantial time and expense to identifying clients receptive to Plaintiff's services, identifying the key decision makers within those various clients, cultivating Plaintiff's client relationships, learning the specialized needs and preferences of Plaintiff's clients, determining how those needs match the capabilities of Plaintiff's employees, and working out client-specific pricing and service agreements.

13. Plaintiff has also devoted substantial time and resources developing its employees and training them to provide business relocation services to Plaintiff's clients consistent with the excellent reputation that Plaintiff has painstakingly cultivated.

**Plaintiff's Employment of Willis**

14. On or about May 29, 2006, Plaintiff hired Willis to work for Plaintiff. Willis, before the commencement of her employment with Plaintiff, had no prior experience in Plaintiff's industry. Plaintiff trained Willis to become a Mid-Level Project Manager.

15. Willis proved to be an excellent employee and was outstanding performing her job duties. In August 2007, Willis was promoted from an entry level Project Administrator to a Team Coordinator; a mid level project manager. As Team Coordinator, Willis was highly involved in providing consulting services to clients and serving as the logistical coordinator during office relocations. Her primary job responsibility was to manage and coordinate office relocations for Plaintiff's clients.

16. Through Willis' employment with Plaintiff, Willis gained an intimate and specialized knowledge of Plaintiff's business practices, operational methodologies, financial and marketing plans and strategies, and its clients.

**Willis' Employment Agreement**

17. Willis was among Plaintiff's key contacts with the clients to whom she was assigned. Through her employment with Plaintiff, Willis acquired valuable and confidential information regarding Plaintiff's clients. As such, Willis was required to enter into an employment agreement which provided, among other things, that for one (1) year after Willis left the employ of Plaintiff, Willis would not, directly or indirectly, solicit or provide services to Plaintiff's

clients. Plaintiff further agreed not to engage in employment with a competitor of Plaintiff in the

Metro-Washington, D.C. Area for a period of one (1) year.

18. Paragraph 7 of Willis' Employment Agreement limits her as follows:

> **...I acknowledge that I will acquire valuable information and skill with respect to the successful business operations of the Corporation**, I agree that during the term of my employment with the Corporation and for a period of one year after termination of such employment, I shall not, directly or indirectly, solicit or divert, or attempt to solicit or divert from the Corporation, any clients or employees of the Corporation to or for the benefit of myself or any third person or entity. This prohibition shall include any potential customers which I solicited during my employment with the Corporation, whether or not that potential customer ultimately became a customer, client or account of the Corporation prior to my departure.
>
> Because I recognize that the services I will perform for the Corporation are special, unique, and of extraordinary character, I agree that for a period of one year from the date of termination or resignation of my employment, I shall not, within the geographical boundaries of the territories to which I have been assigned and in which I have contacted customers while in the employ of the Corporation, directly or indirectly own, manage, operate or control, in any manner, any business of the type and character competitive with the business engaged in by the Corporation at the time of my termination. I further agree that without the prior written consent of the Corporation, for a period of one year from the date of termination, I shall not, directly or indirectly, seek employment with or accept employment by (a) any firm or entity which has an office in the metropolitan area of Washington D.C. (including portions of Maryland and Virginia surrounding Washington D.C.) and which is in competition with the Corporation in the provision of relocation services; (b) any firm or entity (wherever located) for which the Corporation has acted as a subcontractor; or (c) any of the corporation's customers or clients or any of their contractors or affiliates to perform "in house" services of the type furnished by Corporation. (emphasis supplied)

19. Paragraph 8 of Willis' Employment Agreement, in contemplation of enforcement of

the Agreement, provides as follows:

> I understand that each of my agreements are enforceable against me by injunction or other process of law or equity. If a particular provision of this Agreement is too broad or too restrictive to be enforceable, I agree to be bound by the substance and tenor of that provision to the broadest extant valid and enforceable under the laws of the District of Columbia.

20. Plaintiff, in order to ensure that third parties would refrain from inducing or perpetrating a breach of Willis' Employment Agreement, obligated Willis as follows in Paragraph 9:

> Subsequent to the termination of my employment with the Corporation, I agree to inform every prospective employer, client contractor and other potentially interested party of my obligations and duties under this Agreement, and I shall provide a copy of this Agreement to each such person or entity.

21. The contractual restraints in the Employment Agreement were and are reasonably necessary to protect Plaintiff's legitimate business interests, including those specified above, which justify the contractual restraints.

## Willis' Departure from Employment with Plaintiff to Compete Against Plaintiff

22. On or about September 28, 2007, Willis informed Plaintiff's President, E. Reed Stvan ("Stvan"), that she would leaving her employ with Plaintiff. After the meeting in which Willis resigned, Stvan reminded Willis that her Employment Agreement include a "non-compete" clause which Plaintiff intended to enforce. Willis later requested a copy of the agreement from the Plaintiff's Office/HR Manager, which was provided.

23. Willis refused to tell Plaintiff who her new employer would be. Willis did, however state that her new employer was in Herndon, Virginia and that Plaintiff was very familiar with her new employer.

24. On or about October 18, 2007, Michael Wolff ("Wolff"), President and Co-founder of PSG, confirmed to Stvan, via email, that Willis was now an employee of PSG. PSG is a principle competitor of Plaintiff in the business relocation industry in the Washington, D.C. metropolitan area.

## PSG was Aware of Willis' Employment Agreement

25. On or about October 18, 2007, Stvan emailed Miles Harrison, Director of Relocations Division for PSG, informing PSG of the Employment Agreement and advising that the Agreement contained a non-compete provision.

26. On the same day, Wolff responded to Stvan regarding PSG's knowledge of the Employment Agreement. Wolff stated: "Tiffany started with us yesterday, and I was aware of the agreement between Management Alternatives and her." *See* email attached hereto as Exhibit 2.

27. PSG hired Willis to act as a Relocation Manager with specific knowledge of the non-compete provision of the Employment Agreement and Willis' agreement not to work for a competitor for one (1) year following the termination of her employment with Plaintiff. See Website Print-Out, attached as Exhibit 3.

## COUNT ONE
### (Breach of Employment Agreement - Willis)

28. Plaintiff realleges its allegations set forth in paragraphs 1-27 above as if fully set forth herein.

29. The Employment Agreement between Willis and Plaintiff is a valid and enforceable contract, and Plaintiff has fully honored its obligations under the Employment Agreement.

30. As set forth more fully above, Willis has breached, is breaching, and unless enjoined, will continue to breach her obligations under the Employment Agreement by, *inter alia*, seeking and then accepting employment as a "Relocation Manager" with PSG, a competitor of Plaintiff in the business relocation industry, and performing substantially identical services for PSG and its clients as she provided for Plaintiff and Plaintiff's clients. Therefore immediate injunctive relief is warranted.

31. Willis' conduct in breaching the Employment Agreement has caused, is causing, and will continue to cause Plaintiff substantial, immediate, and irreparable injury, including, but not limited to, the potential loss of client/employee relationships and goodwill. Unless enjoined, Willis will continue to breach her obligations and cause further injury.

32. As a result of these breaches, Plaintiff has suffered damages in an amount that cannot presently be determined.

33. A permanent loss of potential business cannot be adequately remedied in an action for damages.

34. Plaintiff had a legitimate business interest in obtaining a restrictive covenant from Willis and has legitimate business interests in enforcing that covenant and enjoining further violations.

WHEREFORE, Plaintiff demands judgment against Willis as follows:

A.    A preliminary injunction restraining and enjoining Willis and those in active concert with her from:

(i)    using, disclosing, misappropriating or converting in any manner or in any form any of Plaintiff's confidential, proprietary or trade secret information;

(ii)    violating the restrictive covenants in the Employment Agreement that Willis signed, including enjoining her from working for or providing relocation services to PSG or any other competitor of Plaintiff in the Washington, D.C. metropolitan area or to its clients; and

(iii)    hiding or destroying any documents or other evidence in any way concerning the allegations in this Complaint.

8

B.    The following other relief:

(i)    Compensatory damages in an amount to be determined;

(ii)    An accounting of any gain received, directly or indirectly, by Willis by virtue of her wrongful acts as described herein;

(iii)    A constructive trust for the benefit of Plaintiff over all advantages of any type received by Willis by virtue of her wrongful acts described herein;

(iv)    Attorneys' fees and costs pursuant to applicable statutes; and

(v)    Such other and further relief as this Court may deem proper.

## COUNT TWO
### (Tortious Interference with Contract - PSG)

35.    Plaintiff realleges its allegations set forth in paragraphs 1-34 above as if fully set forth herein.

36.  The Employment Agreement between Willis and Plaintiff is a valid and enforceable contract, and Plaintiff has fully honored its obligations under the Employment Agreement.

37.    PSG had actual knowledge of the Employment Agreement between Willis and Plaintiff, including the restrictive covenants and non-compete clauses contained in the Employment Agreement, prior to hiring Willis.

38.    Despite this knowledge, PSG tortiously permitted, encouraged, and/or directed Willis to breach paragraph 7 of Willis' Employment Agreement, by employing Willis to perform substantially similar work activities as those she performed while employed by Plaintiff for PSG, a corporation in direct competition with Plaintiff in the Washington, D.C. metropolitan area.

39.    As a result of PSG's intentional, tortious, and improper interference with Plaintiff's Employment Agreement with Willis, Plaintiff has suffered damages, including lost customers, business, sales, profits, and good will.

9

WHEREFORE, Plaintiff demands judgment against PSG as follows:

A.    A permanent injunction restraining and enjoining PSG and those in active concert with it from unlawful interference with contracts between Plaintiff's employees and Plaintiff.

B.    The following other relief:

    (i)    Compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00) and punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00);

    (ii)    Attorneys' fees and costs; and

    (iii)    Such other relief as this Court may deem appropriate.

Respectfully submitted,

Philip B. Zipin, Bar No. 367362
The Zipin Law Firm, LLC
8403 Colesville Rd. #610
Silver Spring, MD 20910
(301) 587-9373 (ph)
(301) 587-9397 (Fax)
Email: pzipin@zipinlaw.com

*Counsel for Plaintiff*

MANAGEMENT ALTERNATIVES INC.



# EMPLOYMENT AGREEMENT

I am about to be (or continue to be) employed by MANAGEMENT ALTERNATIVES, INC. (hereinafter "the Corporation"). Due to the nature of my work with the Corporation, I may be involved with or learn about the Corporation's developments, projects, activities, customers, employees or other related matters, in all of which the Corporation has an important proprietary interest. As an employee of the Corporation, my responsibilities to the Corporation include an understanding and respect for the confidential nature of my work as well as the work of others at the Corporation with whom I may be in contact.

For purposes of this agreement, "Proprietary Information" means all trade secrets and other information and materials which are not generally known to other companies engaged in the relevant trade or industry or to the public, which are disclosed to, known by, or developed by me as a consequence of or through my employment with the Corporation, including all information collected by, discovered, conceived, originated or developed by me or by the Corporation, and all such information previously known to the Corporation. Proprietary information shall include, but not be limited to price lists, financial information, customer names and requirements, customer lists, marketing techniques, production processes, designs, ideas, computer programs, proposals, inventions, improvements, mathematical models, illustrations, and writings and other works of my authorship.

Failure to mark any Proprietary Information as confidential or trade secret material shall not affect the determination of its status under the terms of this Agreement.

In consideration of my employment (or continued employment) by the Corporation and the compensation, which the Corporation pays me for my work, I agree as follows:

## PATENTS, COPYRIGHTS, INTELLECTUAL PROPERTY

1.    I recognize that all products of my work with the Corporation are and shall remain the property of the Corporation. I hereby assign to the Corporation any right, title and interest which I may have in any Proprietary Information which is recognized as property, including all designs, ideas, proposals, inventions, improvements, writings and other works of my authorship, computer programs, illustrations and mathematical models which I conceive, make or suggest during the course of my employment with the Corporation, whether the same shall be developed during normal working hours or otherwise, by myself or with others. This Agreement also covers all of the items above which relate to the Corporation's business problems, or technical or commercial procedures, developments and projects.

2.    I acknowledge that copyright in all copyrightable subject matter, protected by copyright at common law or by statute in the United States and in foreign jurisdictions, produced solely or jointly, belong exclusively to the Corporation and I shall not assert any claim, right, title or interest of any nature whatsoever in or to such matter.

3.    I acknowledge that all trademarks, service marks and trade names devised, coined or suggested by me for use in relation to the Corporation's business are and shall be, to the full extent that ownership thereof is possible, the sole property of the Corporation and I do not, and shall not, assert any claim, right, title or interest of any nature whatsoever in or to any trademark, service mark or trade name.

4.    I agree to sign any applications, forms or other legal documents which are necessary for the Corporation to protect or register any Proprietary Information which may, in the Corporation's sole discretion, be necessary to effectuate the provisions of Paragraphs 1, 2 or 3.

5.    I agree to promptly notify the Corporation of the existence of any Proprietary Information when it is conceived or made by me, or with others.

MANAGEMENT ALTERNATIVES INC.

## PROPRIETARY AND TRADE SECRET INFORMATION

6.    Recognizing the confidential nature of the work done by me and others at the Corporation, I agree not to make any unauthorized use or disclosure of any knowledge or Proprietary Information which is unpublished, confidential or proprietary including, but not limited to, the Corporation's inventions, designs, methods, systems, improvements, client or customer lists, data or other information regarding the employees, financial data, trade secrets or other private or confidential material of the Corporation generated or acquired by me during the course of my employment. I will honor this Agreement both during the course of my employment and in all of my activities after my employment with the Corporation.

## COMPETITIVE ACTIVITIES

7.    Because I acknowledge that I will acquire valuable information and skill with respect to the successful business operations of the Corporation, I agree that during the term of my employment with the Corporation and for a period of one year after termination of such employment, I shall not, directly or indirectly, solicit or divert, or attempt to solicit or divert from the Corporation, any clients or employees of the Corporation to or for the benefit of myself or any third person or entity. This prohibition shall include any potential customers which I solicited during my employment with the Corporation, whether or not that potential customer ultimately became a customer, client or account of the Corporation prior to my departure.

Because I recognize that the services I will perform for the Corporation are special, unique, and of extraordinary character, I agree that for a period of one year from the date of termination or resignation of my employment, I shall not, within the geographical boundaries of the territories to which I have been assigned and in which I have contacted customers while in the employ of the Corporation, directly or indirectly own, manage, operate, or control, in any manner, any business of the type and character competitive with the business engaged in by the Corporation at the time of my termination. I further agree that without the prior written consent of the Corporation, for a period of one year from the date of termination, I shall not, directly or indirectly, seek employment with or accept employment by (a) any firm or entity which has an office in the metropolitan area of Washington D.C. (including portions of Maryland and Virginia surrounding Washington D.C.) and which is in competition with the Corporation in the provision of relocation services; (b) any firm or entity (wherever located) for which the Corporation has acted as a subcontractor; or (c) any of the Corporation's customers or clients or any of their contractors or affiliates to perform "in house" services of the type furnished by the Corporation.

8.    I understand that each of my agreements are enforceable against me by injunction or other process of law or equity. If a particular provision of this Agreement is too broad or too restrictive to be enforceable, I agree to be bound by the substance and tenor of that provision to the broadest extent valid and enforceable under the laws of the District of Columbia.

9.    Subsequent to the termination of my employment with the Corporation, I agree to inform every prospective employer, client contractor and other potentially interested party of my obligations and duties under this Agreement, and I shall provide a copy of this Agreement to each such person or entity.

## GENERAL

10.    This Agreement is the final agreement between the Corporation and me regarding the matters contained herein.

11.    The laws of the District of Columbia will govern this Agreement, and any disputes arising from it.

M A N A G E M E N T   A L T E R N A T I V E S   I N C.

12.   I understand that if any of the provisions of this Agreement are invalid or unenforceable, I agree to be bound by the remaining provisions of this Agreement and any provisions modified to conform to applicable laws.

13.   I agree to provide the Corporation at least three (3) weeks notice in the event I willingly resign my position.

WITNESS THE DUE EXECUTION HEREOF:

ATTEST:                                              MANAGEMENT ALTERNATIVES, INC.

                                                     By: _____  5/23/06
_____                          E. Reed Stvan, President      Date

ATTEST:                                              EMPLOYEE

                                                     By: _____  5/29/06
_____                          Tiffany Willis              Date

- 3 -



**Stvan, Reed**

---

**From:**    Stvan, Reed
**Sent:**    Thursday, October 18, 2007 12:05 PM
**To:**    Stvan, Reed; 'Bob Kirk'
**Subject:** FW: Non Compete Agreement

Bob

this is reply from owner of company. Miles is dir of relocation division. I will call you

---

**From:** Mike Wolff [mailto:mwolff@PROJSOLGROUP.COM]
**Sent:** Thursday, October 18, 2007 12:04 PM
**To:** Stvan, Reed; Miles Harrison
**Cc:** Dave Zorger
**Subject:** RE: Non Compete Agreement

Reed

Tiffany started with us yesterday, and I was aware of the agreement between Management Alternatives and her.

I'm not sure of the intent of your e-mail to Miles, so I will call you to discuss.

Michael Wolff

(703) 563-0498 (direct)
(703) 932-3738 (mobile)
(703) 668-0091 (fax)
(703) 668-0090 (main)

---

**From:** Stvan, Reed [mailto:rstvan@mgmt-alt.com]
**Sent:** Thursday, October 18, 2007 11:59 AM
**To:** Miles Harrison
**Cc:** Stvan, Reed; Mike Wolff
**Subject:** Non Compete Agreement

Miles:

I have tried to reach you a couple times 10 days ago but our paths have not crossed. I was calling to give you a heads up that an employee, Tiffany Willis just left M/A to go to work for another firm. She would not identify the firm except to say that they are located in the Herndon area and "you would be familiar with them".

I do not know if she is joining PSG and obviously if she is not joining PSG this is a moot issue. However I wanted to give you a heads up that she does have a non compete agreement which has proven enforceable in the past.

I know if I was hiring someone who was bound by a contract I would want to be aware of it.

I am attaching a copy of the agreement FYI.

Regards.

10/30/2007

Reed

E. Reed Stvan
President
Management Alternatives Inc
1420 K Street, NW
Suite 500
Washington, DC 20005

Office:  (202) 216-5740
Cell:  (202) 439-8657
Fax:  (202) 842-5063
Email:  rstvan@mgmt-alt.com

Management Alternatives is the nation's leading relocation project planning and furniture management firm. High-risk, logistics-intensive projects are our specialty. We offer the expertise and depth of services to provide the best strategic and tactical change management solutions for corporate, legal, institutional, federal, and non-profit clients. www.mgmt-alt.com

10/30/2007

EXHIBIT

  

RESOURCES    PRESS RELEASES    EMPLOYMENT    CONTACT PSG    We are not your typical pro

# Project Solutions Gro

> e-newsletter si

## Staff Directory



Home

Services

Executive Bios

Case Studies

Project Locations

PSG Advantage

**Mike Wolff**
**Principal**
Phone: 703-563-0498
Email: mwolff@projsolgroup.com

**Dave Zorger**
**Principal**
Phone: 703-563-0499
Email: dzorger@projsolgroup.com

**Al Shotwell**
**Principal - Real Estate Solutions Specialists**
Phone: 703-563-0490
Email: ashotwell@r-e-s-s.com

**Chris Meagher**
**Managing Director, Western Region**
Phone: 949-788-1760
Email: cmeagher@projsolgroup.com

**Jesse Matney**
**Managing Director, Southeast Region**
Phone: 954-557-6380
Email: jmatney@projsolgroup.com

**Miles Harrison**
**Managing Director, Relocation Management**
Phone: 703-357-5096
Email: mharrison@projsolgroup.com

**Elizabeth Tuico**
**Director of Marketing & Business Development**
Phone: 703-563-0482
Email: etuico@projsolgroup.com

**Tim Preski**
**Director**
Phone: 703-563-0496
Email: tpreski@projsolgroup.com

**Michael Tanious**
**Federal Programs Director**
Phone: 703-563-0487
Email: mtanious@projsolgroup.com

**Lance Arthun**

**Director**
Phone: 949-788-1760
Email: larthun@projsolgroup.com

**Jeff Shinrock**
**Director**
Phone: 703-563-0477
Email: jshinrock@projsolgroup.com

**Steve Siegfried**
**Director**
Phone: 703-563-0495
Email: ssiegfried@projsolgroup.com

**Kip Fleury**
**Senior Project Manager**
Phone: 703-563-0492
Email: kfleury@projsolgroup.com

**Melanie Dostis**
**Senior Project Manager**
Phone: 703-563-0489
Email: mdostis@projsolgroup.com

**Sean Katz**
**Senior Project Manager**
Phone: 703-563-0423
Email: skatz@projsolgroup.com

**Carlos Cordeiro**
**Senior Relocation Manager**
Phone: 703-563-0415
Email: ccordeiro@projsolgroup.com

**Debbie Conner**
**Human Resources**
Phone: 703-563-0488
Email: dconner@projsolgroup.com

**Casey Gerwin**
**Project Manager**
Phone: 703-563-0486
Email: cgerwin@projsolgroup.com

**Don Altwein**
**Project Manager**
Phone: 214-460-2912
Email: daltwein@projsolgroup.com

**Laura Mathias**
**Facilities Manager**
Phone: 302-944-2768
Email: lmathias@projsolgroup.com

**Jeff Glodt**
**Project Manager**
Phone: 949-788-1760
Email: jglodt@projsolgroup.com

**Jessica Williams**
**Project Analyst**
Phone: 913-315-4414
Email: jwilliams@projsolgroup.com

**Michael Grammo**
**Relocation Manager**
Phone: 703-563-0487
Email: mgrammo@projsolgroup.com

**Yolanda Tines**
**Project Manager**
Phone: 571-221-8463
Email: ytines@projsolgroup.com

**Matthew McLaughlin**
**Project Manager**
Phone: 703-563-0417
Email: mmclaughlin@projsolgroup.com

**Beverly O'Brien**
**Relocation Manager**
Phone: 703-499-6648
Email: bobrien@projsolgroup.com

**Michael Zorger**
**Project Manager**
Phone: 703-563-0418
Email: mzorger@projsolgroup.com

**Jennifer Truesdell**
**Project Manager**
Phone: 703-563-0422
Email: jtruesdell@projsolgroup.com

**Jennifer Ventura**
**Project Analyst**
Phone: 703-563-0493
Email: jventura@projsolgroup.com

**Carrie Dombroff**
**Relocation Manager**
Phone: 703-563-0416
Email: cdombroff@projsolgroup.com

**Charlet Lynch**
**Project Manager**
Phone: 954-465-1023
Email: clynch@projsolgroup.com

**Lisa Wolff**
**Director of Finance**
Phone: 703-563-0497
Email: lwolff@projsolgroup.com

**Tiffany Willis**
**Relocation Manager**
Phone: 703-563-0422
Email: twillis@projsolgroup.com

**Lesley Henry**
**Finance Manager**
Phone: 703-563-0480
Email: lhenry@projsolgroup.com

**Don Walters**
**Facility Manager**
Phone: 303-539-7824
Email: dwalters@projsolgroup.com

**Jessica Garcia**
**Senior Administrative Assistant**
Phone: 949-788-1760
Email: jgarcia@projsolgroup.com

**Dayana Tanious**
**Administrative Assistant**
Phone: 703-563-0494
Email: dtanious@projsolgroup.com

580 Herndon Parkway, Suite 500 • Herndon, Virginia 20170 • info@ProjSolGroup.com • T:70

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| **I (a) PLAINTIFFS** | **DEFENDANTS** Tiffany Willis & |
|---|---|
| Management Alternatives, Inc. | Project Solutions Group, Inc. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Fairfax, VA (IN U.S. PLAINTIFF CASES ONLY) |
| District of Columbia | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Philip B. Zipin  The Zipin Law Firm 8403 Colesville Rd #610 (301) 587-9373   Silver Spring, MD 20910 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ **A. Antitrust** | ☐ **B. Personal Injury/ Malpractice** | ☐ **C. Administrative Agency Review** | ☒ **D. Temporary Restraining Order/Preliminary Injunction** |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act  **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g))  **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.  *(If Antitrust, then A governs)* |

| ☐ **E. General Civil (Other)** | **OR** ☐ **F. Pro Se General Civil** | | |
|---|---|---|---|
| **Real Property** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent, Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property  **Personal Property** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | **Bankruptcy** ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157  **Prisoner Petitions** ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition  **Property Rights** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark  **Federal Tax Suits** ☐ 870 Taxes (US plaintiff or defendant ☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty** ☐ 610 Agriculture ☐ 620 Other Food &Drug ☐ 625 Drug Related Seizure of Property 21 USC 881 ☐ 630 Liquor Laws ☐ 640 RR & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health ☐ 690 Other  **Other Statutes** ☐ 400 State Reapportionment ☐ 430 Banks & Banking ☐ 450 Commerce/ICC Rates/etc. ☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 480 Consumer Credit ☐ 490 Cable/Satellite TV ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange ☐ 875 Customer Challenge 12 USC 3410 ☐ 900 Appeal of fee determination under equal access to Justice ☐ 950 Constitutionality of State Statutes ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| □ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

X 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify)    □ Multi district Litigation    □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*Preliminary Injunction; Breach of Contract; Tortious Interference*

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS    □ ACTION UNDER F.R.C.P. 23    **DEMAND $** $1,000,000.00    Check YES only if demanded in complaint    JURY DEMAND: X YES    □ NO

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    □ YES    X NO    If yes, please complete related case form.

DATE 11/16/2007    SIGNATURE OF ATTORNEY OF RECORD *Philip B. Zipin*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.