IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MANAGEMENT ALTERNATIVES, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | |
| TIFFANY WILLIS, *et al.* | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff Management Alternatives, Inc ("Plaintiff"), by and through undersigned counsel, moves this Court to enjoin Defendant Tiffany Willis ("Willis") from continuing to violate the non-solicitation and non-compete clauses of her Employment Agreement with Plaintiff. Willis is currently working for Defendant, Project Solutions Group, Inc. ("PSG"), a corporation in direct competition with Plaintiff for the provision of business relocation services in the Washington, D.C. metropolitan area.

Willis' employment with PSG is in clear violation of Willis' contractual restrictions against doing so. As a result, Plaintiff is suffering irreparable injury with each passing day. Thus a preliminary injunction is necessary.

Further support for this Motion is detailed in the Memorandum of Points and Authorities, filed herewith.

WHEREFORE, Plaintiff hereby respectfully requests that this Honorable Court:

A.    Enter an Order granting a preliminary injunction restraining and enjoining Willis and those in active concert with her from:

       (i)     using, disclosing, misappropriating or converting in any manner or in any form any of Plaintiff's confidential, proprietary or trade secret information;

       (ii)    violating the restrictive covenants in the Employment Agreement that Willis signed, including enjoining her from working for or providing services to PSG or any other competitor of Plaintiff in the Washington, D.C. metropolitan area; and

       (iii)   hiding or destroying any documents or other evidence in any way concerning the allegations in Plaintiff's Complaint.

B.    And for all other and further relief that the nature of this cause may require.

Respectfully submitted,

*Philip B. Zipin*

Philip B. Zipin, Bar No. 367362
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email: pzipin@zipinlaw.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MANAGEMENT ALTERNATIVES, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | |
| TIFFANY WILLIS, *et al.* | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Management Alternatives, Inc. ("Plaintiff"), by and through undersigned counsel, hereby moves for a preliminary injunction enjoining Defendant Tiffany Willis ("Willis") from violating the non-solicitation and non-compete clauses of her Employment Agreement (attached hereto as Exhibit 1) with Plaintiff by (1) improperly competing with Plaintiff by working for a competitor, in violation of her Employment Agreement, (2) utilizing Plaintiff's trade secret information; and, (3) soliciting Plaintiff's clients and potential clients. Willis is currently working for Defendant Project Solutions Group, Inc. ("PSG"), a corporation in direct competition with Plaintiff for the provision of business relocation services in the Washington D.C. metropolitan area. Willis' current job duties at PSG are substantially similar to the work activities Willis performed while employed with Plaintiff.

Willis' employment with PSG violates Willis' contractual restriction against doing so. As a result of Willis' breach of contract and otherwise wrongful conduct, Plaintiff is suffering irreparable injury with each passing day. Thus, a preliminary injunction enjoining Willis from continued employment with PSG is necessary.

# FACTS

Plaintiff is in the business of providing business relocation and facility-change related services for business clients. Plaintiff manages costs and risks associated with its clients' relocation issues. Plaintiff assists business clients in relocating offices of all sizes throughout the Metropolitan Washington, D.C. area.

In late May 2006, Plaintiff hired Willis, who had no prior experience in Plaintiff's industry. Plaintiff trained Willis to become a Mid-Level Project Manager. In August 2007, Willis was promoted from an entry level Project Administrator to a Team Coordinator; a mid level project manager. As Team Coordinator, Willis was highly involved in providing consulting services to clients and serving as the logistical coordinator during office relocations. Her primary job responsibility was to manage and coordinate office relocations for Plaintiff's clients.

At the commencement of Willis' employment with Plaintiff, Willis signed an Employment Agreement that contained non-solicitation and non-compete clauses. Such restrictions are customary and necessary to protect Plaintiff's financial interests in the event that employees leave their employ with Plaintiff. In fact, less than sixty (60) individuals are trained to perform work similar to the kind of work Willis performed for Plaintiff throughout the entire Washington, D.C. metropolitan area. The specific language of the non-solicitation and non-compete clauses of the Employment Agreement is as follows:

> **Because I acknowledge that I will acquire valuable information and skill with respect to the successful business operations of the Corporation**, I agree that during the term of my employment with the Corporation and for a period of one year after termination of such employment, I shall not, directly or indirectly, solicit or divert, or attempt to solicit or divert from the Corporation, any clients or employees of the Corporation to or for the benefit of myself or any third person or entity. This prohibition shall include any potential customers which I solicited

2

during my employment with the Corporation, whether or not that potential customer ultimately became a customer, client or account of the Corporation prior to my departure.

**Because I recognize that the services I will perform for the Corporation are special, unique, and of extraordinary character**, I agree that for a period of one year from the date of termination or resignation of my employment, I shall not, within the geographical boundaries of the territories to which I have been assigned and in which I have contacted customers while in the employ of the Corporation, directly or indirectly own, manage, operate or control, in any manner, any business of the type and character competitive with the business engaged in by the Corporation at the time of my termination. I further agree that without the prior written consent of the Corporation, for a period of one year from the date of termination, I shall not, directly or indirectly, seek employment with or accept employment by (a) any firm or entity which has an office in the metropolitan area of Washington D.C. (including portions of Maryland and Virginia surrounding Washington D.C.) and which is in competition with the Corporation in the provision of relocation services; (b) any firm or entity (wherever located) for which the Corporation has acted as a subcontractor; or (c) any of the corporation's customers or clients or any of their contractors or affiliates to perform "in house" services of the type furnished by Corporation.

Employment Agreement at paragraph 7 (emphasis supplied).

Willis further covenanted, with regards to the interpretation and enforcement of the Employment Agreement, that:

**I understand that each of my agreements are enforceable against me by injunction** or other process of law or equity. If a particular provision of this Agreement is too broad or too restrictive to be enforceable, I agree to be bound by the substance and tenor of that provision to the broadest extant valid and enforceable under the laws of the District of Columbia.

*Id.* at paragraph 8 (emphasis supplied).

In late September 2007, Willis informed Plaintiff that she would be leaving her employ with Plaintiff. Willis was a highly successful employee with a mastery of the unique skill set required for success in Plaintiff's industry. In an effort to entice Willis into remaining with Plaintiff, Plaintiff offered Willis a forty-five percent (45%) pay raise. Willis rejected Plaintiff's

3

offer in favor of the offer PSG made to her. As an employee for PSG, Willis' value was greatly enhanced because of the skills and contacts Willis gained while employed by Plaintiff, particularly the identity of and particulars regarding the contact person at Plaintiff's single largest client. *See* Affidavit at paragraph 4.

In mid-October 2007, Willis began her employment with PSG performing substantially similar work as she performed with Plaintiff. PSG is a corporation in direct competition with Plaintiff which provides office and business relocation services to business clients in the Washington, D.C. metropolitan area. Willis continues to work for PSG in clear violation of her contractual obligations not to do so. As a result Plaintiff is suffering irreparable injury with each passing day. Thus a Preliminary Injunction is necessary.

## ARGUMENT

Willis violated the non-solicitation and non-compete clauses of her Employment Agreement with Plaintiff when she began working for PSG. As was previously described, Willis agreed not to, for a period of one (1) year after the end of her employ with Plaintiff, "directly or indirectly, seek employment with or accept employment by any firm or entity which has an office in the Washington D.C. metropolitan area which is in competition with the Corporation in the provision of relocation services." Willis knowingly and intentionally sought out and accepted employment with PSG, a corporation in direct competition with Plaintiff in the provision of business relocation services, and which holds itself out as a competitor with Plaintiff for business clients in the Washington, D.C. metropolitan area. Willis is working as a "Relocation Manager" performing identical services to those she provided to Plaintiff's clients. *See* PSG Staff Directory Website Printout, attached hereto as Exhibit 2.

Willis continues to be an employee of PSG. As an employee of PSG, Willis works in competition with Plaintiff, in violation of her Employment Agreement. Willis further, as a necessary corollary of her employment with PSG, upon information and belief, solicits both current business clients as well as potential business clients of Plaintiff. Each current or potential client that Plaintiff loses as a result of Willis' improper solicitation and competition with Plaintiff has the potential of causing substantial financial damages to Plaintiff, thus necessitating the issuance of a preliminary injunction.

Well settled principles govern this Court's determination as to whether a preliminary injunction should be issued in this case. Plaintiff must show:

1. That it is likely to prevail on the merits;

2. That it will suffer irreparable injury absent the granting of injunctive relief;

3. That the issuance of an injunction will not cause substantial harm to Willis or other persons interested in the proceedings; and

4. That the issuance of an injunction is in the public interest (or at least is not adverse to the public interest).

*Smith, Bucklin & Assoc., Inc. v. Sonntag*, 83 F.3d 476, 479 (D.C. Cir. 1996); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

This court has found that the issuance of injunctive relief is proper in cases where the violation of an enforceable non-compete agreement is at issue. *Morgan Stanley DW, Inc. v. Rothe*, 150 F.Supp. 2d 67 (D.D.C. 2001) (Urbina, J.) (issuing preliminary injunction and upholding a one-year covenant not to compete within 100 miles of Washington, D.C.). An examination of the relevant factors demonstrates that the issuance of a preliminary injunction is appropriate in this case.

A.   **Plaintiff Will Likely Succeed on the Merits**

Plaintiff's request for injunctive relief is predicated on Willis' breach of the non-solicitation and non-compete clauses of her Employment Agreement. The basis for Plaintiff's allegation of Breach of Contract, seeking injunctive and other relief, is outlined in paragraphs 2-4 of the sworn affidavit testimony of Reed Stvan, Plaintiff's President, attached hereto as Exhibit 3. Plaintiff will likely succeed on the merits of this Count because the Employment Agreement is unambiguous and legally enforceable, and Willis has plainly violated the terms of the Employment Agreement by working for Plaintiff's competitor, PSG.

The law in this jurisdiction is clear[1]: restrictive covenants contained in employment agreements are enforceable where (1) they are reasonable in time and geography, and (2) are necessary to protect the employer's business. *See Morgan Stanley DW, Inc.* at 74-75; *Group Ass'n Plans, Inc. v. Colquhoun* 292 F.Supp. 564, 566 (D.D.C. 1968.); *Burton, Parsons & Co. v. Parsons*, 146 F. Supp. 114, 116-117 (D.D.C. 1956). The provisions of the Employment Agreement that Plaintiff is seeking to enforce satisfy both requirements, *to wit*, Willis is prohibited from, directly or indirectly, (1) seeking employment with or accepting employment by any firm or entity which has an office in the Washington D.C. metropolitan area, (2) which is in competition with Plaintiff in the provision of relocation services. Willis' restrictive covenant is reasonably limited in duration to a period of one (1) year after termination of Willis' employment.

---

[1] There is no dispute that District of Columbia law applies. *See* Employment Agreement at Paragraph 11: "The laws of the District of Columbia will govern this Agreement, and any disputes arising from it." *See also*, Employment Agreement at Paragraph 8: "I understand that each of my agreements are enforceable against me by injunction or other process of law or equity. If a particular provision of this Agreement is too broad or too restrictive to be enforceable, I agree to be bound by the substance and tenor of that provision to the broadest extent valid and enforceable under the laws of the District of Columbia."

Restrictions similar to the one agreed to in Willis' Employment Agreement have been upheld by this Court. *See Morgan Stanley DW, Inc.* at 74-75 (upholding non-compete agreement restricting competition for one year, unless the defendant moves more than one hundred miles from Washington, D.C.); *Meyer v. Wineburgh*, 110 F. Supp. 957 (D.D.C. 1953) (enforcing covenant containing five year and thirty mile restriction preventing the defendant from working for a competitor that solicits clients or potential clients of the plaintiff).

Indeed, as the D.C. Circuit acknowledged in *Smith, Bucklin & Assocs., Inc. v. Sonntag, supra*: "Such covenants are perfectly legitimate under District of Columbia law" because covenants are, "a rather standard effort to prevent Plaintiff's employees from capturing the full value of the relationships they develop with their employer's clients for themselves." 83 F.3d at 480. This is precisely what Willis has done here by working for PSG; capturing the value of the relations she developed by working with Plaintiff's clients for herself, and for PSG.

### B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief and an Injunction would Promote the Public Interest

In *Morgan Stanley DW, Inc.* at 76, Judge Urbina found that the District of Columbia's Uniform Trade Secrets Act, D.C.Code §§ 48-502 *et seq.*, expressly provides for injunctive relief to protect an employer's trade secrets. D.C.Code defines a trade secret as:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (A) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of reasonable efforts to maintain its secrecy.

D.C.Code § 48-501(4)(A), (B). Judge Urbina found that customer lists, including the names and addresses of hundreds of Morgan Stanley accounts, were trade secrets, and therefore were properly protectable by the issuance an injunction.

In the instant case, for more than a year Willis worked for Plaintiff and was privileged to unfettered access to confidential information pertaining to Plaintiff's clients and specific contacts within those businesses. Willis gained access to phone numbers, street addresses, email addresses and other key information related to Plaintiff's clients. Willis also gained access to compiled information pertaining to specific needs of Plaintiff's clients and documents relating to Plaintiff's clients and their key contact people. Such information has been compiled by Plaintiff through many years of marketing and advertising and at significant expense to Plaintiff. This information holds significant economic value to Plaintiff as well as to Plaintiff's competitors, who do not have ready access to such information. Moreover, Plaintiff's insistence on a non-compete agreement demonstrates a reasonable and measured attempt to prevent Plaintiff's competitors from gaining unfair access to Plaintiff's client information and business methods by way of hiring Plaintiff's former employees.

Plaintiff's information and business methods fit squarely within the definition of what is considered a trade secret. Willis' conduct has caused, is causing, and will continue to cause Plaintiff substantial and immediate irreparable injury, including, but not limited to, the potential loss of client/employee relationships and goodwill. Willis continues to breach the terms of her Employment Agreement with each passing day. Unless enjoined, Willis will continue to breach her obligations and cause further injury.

Plaintiff should be protected by the issuance of an injunction; the relief Judge Urbina ordered for the plaintiff in *Morgan Stanley DW, Inc.* is appropriate here.

### C. Any Harm to Willis from the Issuance of a Preliminary Injunction is Far Outweighed by the Benefit of Injunctive Relief to Plaintiff

The issuance of a preliminary injunction will protect, among other things, Plaintiff's goodwill, business reputation, methods of business operation, and contract rights. By contrast, Willis will merely be required to abide by the terms of a contract to which she knowingly and willingly agreed and for which she received consideration in the form of employment with Plaintiff and compensation therefor. The benefits of injunctive relief to Plaintiff far outweigh any potential detriment to Willis.

Willis knowingly and willingly agreed to be bound by the terms of the Employment Agreement. Willis agreed that, for a period of one year from the date of termination or resignation of her employment, she would not seek employment or be employed by a competitor of Plaintiff. The Employment Agreement unambiguously sets forth the consequences for Willis' breach of the contract. Paragraph 8 of the Agreement reads, "I understand that each of my agreements are enforceable against me by injunction…"

It must be further noted that at the beginning of Willis' employment with Plaintiff, Willis had no prior experience in the business relocation industry. Moreover, Willis only worked for Plaintiff for approximately one and one-half years. Willis clearly has other marketable skills exclusive of the skill set Willis gained while employed by Plaintiff. Thus, Willis has the capability of obtaining gainful employment in a myriad of other industries and is not unduly burdened by the restriction proscribing her from competing against Plaintiff in the Washington, D.C. metropolitan area. Moreover, Willis has proved herself an excellent employee who is capable of learning new skills in a new industry.

In contrast, if this Court does not grant a preliminary injunction, Plaintiff would suffer irreparable and immediate harm. As has been noted in detail, Plaintiff's trade secrets and other

confidential information will be compromised if Plaintiff's competitor PSG is given access to and is able to utilize such information. Such a hardship might well strike a devastating blow to Plaintiff's financial well being and future industry strength and reputation in this small and insular market.

Further, if the non-solicitation and non-compete clauses of Plaintiff's Employment Agreement are not upheld, the aforementioned damages would continue to plague Plaintiff's business. Such a ruling would surely embolden Plaintiff's current and future employees to breach their Employment Agreements and compete against Plaintiff for current and potential clients. Such a scenario would result in a severe burden for Plaintiff.

## CONCLUSION

Plaintiff has established the necessary facts to meet its burden of demonstrating the need for a preliminary injunction. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's request for a preliminary injunction and enjoin Defendant Tiffany Willis from working for Project Solutions Group, Inc. for a period of one (1) year from the date of her termination of employment with Plaintiff.

Respectfully submitted,

/s/ Philip B. Zipin

Philip B. Zipin, Bar No. 367362
The Zipin Law Firm, LLC
8403 Colesville Rd. #610
Silver Spring, MD 20910
(301) 587-9373 (ph)
(301) 587-9397 (Fax)
Email: pzipin@zipinlaw.com

*Counsel for Plaintiff*

## AFFIDAVIT OF REED STVAN

1. I am over the age of 18 and competent to testify in this matter.

2. I am the President of Management Alternatives, Inc. ("M/A"). M/A has been in business for 25 years. M/A is a relocation planning and management firm which is one of the oldest if not the oldest firms in this niche industry in the U.S. M/A pioneered relocation project management and has, over many years experience with hundreds of clients, developed highly refined operating procedures, methodologies and reporting tools. As M/A's overriding value proposition is to prevent disruption to a clients operation during relocation, our service touches every aspect of a business; from facilities and administration to accounting, security, HR, IT/telephones to sales and production. M/A's involvement with virtually the entire operation of a business requires accurate, timely management of many, many details, and M/A employees literally touch every employee in the business that is moving. To cost-effectively gather enterprise information and handle a huge number of details, M/A has developed many processes, methodologies, tools, communication formats and protocols, each being refined over many projects. When a new employee joins M/A, the employee is exposed to and trained on virtually all of M/A's methods and tools so that every employee is working in sync and so that the employee is capable of serving on a project from start to finish.

3. I estimate that there are five firms (with more than 5 employees) in the relocation industry that compete for the same limited number of target clients in the Washington, D.C. Metropolitan area  None of the firms has more than 25-30 total employees engaged in relocation management. The pool of trained, experienced employees, from all area relocation firms, currently employed in the industry locally is fewer than 60 (including entry level, clerical, and up to senior project manager). M/A spends significant resources on recruiting as the pool of experienced candidates is so small, but have little success as few of the experienced individuals are interested in moving to another company. Therefore, we are virtually required to hire and train inexperienced candidates that all require extensive training before they can be productive. This pool of entry level candidates is also limited by the nature of our business, which requires extensive night and weekend work and long hours. Therefore, the loss of any high quality employee results in a notable financial setback for M/A due to the resources expended in preparing the person to become productive and due to the significant cost of recruiting and retraining the replacement. In the last three years, I have found less than 5% of candidates responding to our recruiting advertisements worthy of even preliminary interviews. We hire less than 4% of candidates that we actually interview. As President of M/A, I spend between 10 and 15% of my time directly involved in recruiting.

     4.     Tiffany Willis, after significant training, was an excellent employee for M/A whose services were highly valued. She was the primary contact person for our account with one our largest single clients, a large corporate account which represented 13% of M/A's revenues this year. She was the person whom I entrusted with interfacing with the client and the particular individuals who made (and continue to make) the decision regarding which relocation firm to hire to assist this particular company. Near the end of her employment with M/A, she came to me and told me that she had received a job offer from a firm whom she assured me I knew (although she declined to tell me the name) for 33% more than she had been earning with M/A. In a determined effort to keep her in M/A's employ, I offered her a 45% raise. She accepted this counter offer, but then after talking to the competing firm, who offered her still more money, she rejected M/A's offer and went to work for M/A's competitor, PSG. I believe that her value to PSG would be greatly enhanced if she were sharing the information she gained while employed at M/A, particularly the identity of and particulars regarding the contact person at our single largest client.

     I SOLEMNLY AFFIRM under the penalties of perjury that the contents of this Affidavit are true and correct to the best of my knowledge, information, and belief.

_____11/19/07_____                    _____Reed Stvan_____
Date                                                               Reed Stvan

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MANAGEMENT ALTERNATIVES, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No.: |
| | * | |
| TIFFANY WILLIS, *et al.* | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

UPON CONSIDERATION of Plaintiff Management Alternatives, Inc.'s Motion for Preliminary Injunction, the Memorandum in Support thereof, any Opposition thereto, and all matters of record, it is this _____ day of _____, 2007, by the U.S. District Court for the District of Columbia,

**ORDERED**, that the Motion be and hereby is GRANTED. And it is further

**ORDERED**, that Willis and those in active concert with her be and the same hereby are restrained and enjoined, until October 1, 2008 from:

(i) using, disclosing, misappropriating or converting in any manner or in any form any of Plaintiff's confidential, proprietary or trade secret information;

(ii) violating the restrictive covenants in the Employment Agreement that Willis signed, including enjoining her from working for or providing services to PSG or any other competitor of Plaintiff in the Washington, D.C. metropolitan area; and

(iii) hiding or destroying any documents or other evidence in any way concerning the allegations in Plaintiff's Complaint.

_____
Judge, U.S. District Court
for the District of Columbia